**MORRISON | FOERSTER**

250 WEST 55TH STREET
NEW YORK, NY 10019-9601

TELEPHONE: 212.468.8000
FACSIMILE: 212.468.7900

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI
SINGAPORE, TOKYO, WASHINGTON, D.C.

# MEMO ENDORSED

December 29, 2020

Writer's Direct Contact
+1 (212) 336.4069
DFioccola@mofo.com

**Via ECF**

Honorable Ona T. Wang
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007
Wang_NYSDChambers@nysd.uscourts.gov

Re:   *Venture Group Enterprises, Inc. v. Vonage Business Inc.* (Case No. 1:20-cv-04095)

Dear Judge Wang:

On behalf of Vonage, we respectfully request a conference pursuant to Rule II(b) of Your Honor's Individual Practices. Vonage was hopeful that propounding early discovery into two key issues—Vonage's proper termination for cause of the governing agreement with Venture and Venture's alleged damages—would promote "the just, speedy, efficient, and inexpensive resolution of this dispute." Fed. R. Civ. P. 1. But Venture's refusal to acknowledge facts in its own files that resolve both issues necessitated this motion. The parties met and conferred and reached an impasse on the issues below.

Vonage previously previewed (*see* Dkt. No. 52) that Venture's Sub-Agents lied to potential customers to induce them to sign up with Vonage. The limited discovery exchanged to date, including recordings of sales calls *produced by Venture*, now confirms that fact. Examples of such statements are in Appendix I, none of which were true. As Vonage has now repeatedly notified Venture, these call recordings, at a minimum, show that Vonage properly terminated the governing contract for cause in August 2019. Indeed, Vonage cited Venture's Sub-Agents' misconduct and misrepresentations as a basis for that termination. Venture at least had an obligation to investigate *then* (if not before, as part of its contractual obligation to manage and oversee its Sub-Agents). But it appears that Venture instead filed a lawsuit before it took the time to review its own records. Even though Vonage—through costly and time-consuming discovery—has now brought these recordings to Venture's attention, Venture still refuses to admit what its own evidence conclusively shows: this case is really about Vonage's counterclaims stemming from Venture's misconduct, and Vonage is the victim.

### Venture Refuses to Admit Facts Confirmed By Its Own Records.

*Requests for Admission Nos. 9 and 12.* These RFAs asked Venture to admit that its Sub-Agents told prospective customers that Vonage had agreements with a competitor that required the customer to switch to Vonage. (Ex. A.) Venture denied these RFAs and further stated in response that it was not able to discover such evidence. *Id.* That response is directly contradicted by Venture's own call recordings. Vonage has pointed Venture to the call recordings quoted in Appendix I at least four times in efforts to obviate this motion, yet Venture continues to maintain that these calls somehow do not evidence the false statements that "Customers must switch from [another telecommunications provider]

ny-2036397

**MORRISON | FOERSTER**

Honorable Ona T. Wang
December 29, 2020
Page Two

. . . because the provider was . . . forced to give up phone accounts." Venture should be ordered to withdraw its denials of RFAs Nos. 9 and 12 and to provide amended responses in light of the facts demonstrated by these recordings. *See Apex Oil Co. v. Belcher Co. of N.Y.*, 855 F.2d 1009, 1019 (2d Cir. 1988) (affirming determination that denial by defendant was unjustified and remanding for calculation of sanctions); *Billups v. West*, No. 95 Civ. 1146 (KMW)(HBP), 1997 U.S. Dist. LEXIS 2367, at *29-*30 (S.D.N.Y Mar. 6, 1997) ("Courts have ordered supplemental answers and sanctions where a party has failed to admit a matter later proven true"). Compelling a sufficient response under Rule 36 will streamline discovery and the resolution of key issues in this case. Venture cannot refuse to admit facts, and thus drive up needless expense and waste precious judicial resources, just because doing so refutes its claims.

*Requests for Production Nos. 1 and 3.* Relatedly, these document requests seek recordings of telephone calls concerning the sales of Vonage services between Venture and/or its Sub-Agents and potential customers. Venture produced 20,000 incomplete sales calls. Specifically, the recordings abruptly end when a customer begins to object to signing up for Vonage services. Venture did not provide any notice that the calls were incomplete, forcing Vonage to discover the issue itself, only after it reviewed thousands of these calls at significant cost. Accordingly, Vonage respectfully requests that the Court order that Venture immediately produce the complete recordings for the calls represented by VENTURE00000001 – VENTURE00020916, and explain any missing portions of such calls. Vonage expects the full recordings to reveal further misrepresentations like those identified in Appendix I. Vonage also seeks its fees and costs for the review of the incomplete calls.

*Request for Admission No. 1.* Vonage's first RFA asked Venture to "[a]dmit that You agreed, pursuant to the Channel Partner Agreement, that You were 'solely responsible for the acts and omissions of Your Sub-Agents . . . .'" (Ex. A.) This is a straightforward request concerning the governing agreement at issue. *See, e.g., Booth Oil Site Admin. Grp. v. Safety-Kleen Corp.*, 194 F.R.D. 76, 80 (W.D.N.Y. 2000) ("a request directed to another party seeking an admission or denial of a document's meaning . . . relates to a statement [of] fact, and is authorized by Rule 36."). But Venture refused to provide a non-evasive answer as required by Rule 36. Instead, it admitted "only that the quoted language appears in the Channel Partner Agreement" but then stated "that the Channel Partner Agreement provides the responsibility [sic] is defined to include Venture's right to notice and opportunity to cure acts and omissions of Subagents, neither of which Vonage alleges it provided to Venture" and "that the parties, from time to time, supplemented, modified, or otherwise gave meaning to the terms of the Channel Partner Agreement." (Ex. A.)

This is not a sufficient response because it doesn't say anything. Venture's answer at once concedes that it agreed to this contractual provision but then suggests it somehow might not have been bound by it because: (i) it did not have the opportunity to cure; and (ii) the Agreement might have been somehow subsequently altered. But neither proffered excuse is valid. First, the governing agreement expressly provided Venture an opportunity to cure in Section 8.2.1 (ECF No. 35-1 at 8-9). That provision belies the first proffered excuse and, in any event, does not alter Venture's pledge to be solely responsible for the acts or omissions of its Sub-Agents in Section 10.6. Second, the Agreement also clearly provides that it can only be amended by a writing signed by both parties. (*Id.* at 9.) Venture is therefore required to come forward with facts to support its position that the contract was somehow revised as to its

ny-2036397

MORRISON | FOERSTER

Honorable Ona T. Wang
December 29, 2020
Page Three

responsibility for its Sub-Agents.[1]  Thus, Venture did not "fairly respond to the substance of the matter." Fed. R. Civ. P. 36(a)(4); *Diederich v. Dep't of Army*, 132 F.R.D. 614, 617 (S.D.N.Y. 1990) (a plaintiff's request for admission about the meaning of a document at issue simply asks the defendant to confirm or deny that it had the understanding set forth by plaintiff).  Venture cannot credibly claim that its confusing and conflicting statements were mere qualifications.  That is because qualifications are to "provide clarity and lucidity to the genuineness of the issue and not [to] obfuscate, frustrate, or compound the references," as Venture's response does here.  *Spin Master Ltd. v. Bureau Veritas Consumer Prod. Serv., Inc.*, No. 08-CV-923A (Sr), 2012 WL 1038613, at *3 (W.D.N.Y. Mar. 27, 2012) (quotations and citations omitted).  Accordingly, Vonage respectfully requests that the Court compel Venture to provide a sufficient response to RFA No. 1.

### *Venture Refuses To Respond To Discovery Demonstrating It Has No Damages.*

Under the Agreement, if Vonage properly terminated Venture for cause, Venture forfeits any right to payments from Vonage.  (ECF No. 35-1 at 8.)  The discovery requests above are designed to efficiently prove that Vonage properly terminated for cause and that this case is really about Vonage's counterclaims.  Further, in Interrogatory No. 2, Vonage asked for a computation of each category of Venture's alleged damages. (Ex. B.)  Venture estimated its damages to be at least $17 million.  But the limitation of liability provision contained in the parties' agreement caps Venture's alleged damages at twelve times the average monthly commissions paid under the agreement during the three-month period preceding the claim,  (ECF No. 35-1 at 7), which amounts to only a few hundred thousand dollars—a fraction of what Venture is claiming.  As such, Vonage asked for additional factual support and explanation, including Venture's view of the limitation of liability provision.  Venture refused and indicated that it would adopt a "wait and see" approach and only refine its answer after expert discovery (if at all).  (Ex. C at 2-3.)  This is improper because Venture currently possesses factual information relating to how the limitation of liability provision impacts its damages.  This is not an expert issue, nor is it a request for a legal conclusion.  Vonage is simply seeking fact discovery regarding Venture's damages based on information readily available to it, as mandated by Rule 26.  Indeed, by failing to account for or address the limitation of liability provision, Venture's answer to this interrogatory is non-responsive.  *See Taylor v. City of New York*, No. 19 Civ. 6754 (KPF), 2020 U.S. Dist. LEXIS 209279, at * 16 (S.D.N.Y Nov. 9, 2020) (holding interrogatory seeking information relevant to the extent of plaintiff's damages does not violate Local Rule 33.3).  Further, the course of discovery in this case will be much different if Venture's damages claim is a few hundred thousand dollars rather than $17 million because of the proportionality rules that govern discovery.  *See* Fed. R. Civ. P. 26(b)(1); *see also Osucha v. Alden State Bank*, No. 17CV1026V, 2019 U.S. Dist. LEXIS 214744, at *11  (W.D.N.Y. Dec. 12, 2019) (determining plaintiff's requested discovery was disproportionate to the needs of the case considering, among other things, the alleged monetary value of the plaintiff's claims.)

---

[1] As Vonage has informed Venture, Vonage has no knowledge of any facts that could support Venture's argument that Venture did not have a period to cure or that Venture was not responsible for its Sub-Agents' misconduct.

ny-2036397

**MORRISON | FOERSTER**

Honorable Ona T. Wang
December 29, 2020
Page Four

Respectfully submitted,

*/s/ David J. Fioccola*

David J. Fioccola

cc:  all counsel of record via ECF

---

1. Vonage's requests to compel more specific—if not different—responses to written discovery are **DENIED**. The responses, conclusions, and admissions sought are for the fact finder to determine.

2. Venture is directed to conduct a search for complete recordings of the calls represented by VENTURE00000001 – VENTURE00020916 and, if they exist and are in possession of those recordings, to produce them to Vonage. Additionally, Vonage shall describe, in a letter to be filed on the docket on **February 12, 2021**, what efforts it has taken, if any, to obtain those recordings from the "verification vendor" referenced in Venture's submission. (*See* ECF 74 at 2). The Court has intentionally omitted the words "custody" and "control" in this order.

3. Vonage and Venture are directed to meet and confer on whether Venture has provided a computation of damages that complies with Fed. R. Civ. P. 26(a)(1)(A)(iii). If the parties do not agree, they shall submit a joint letter of three pages or less (single-spaced) setting forth their respective positions, by **February 12, 2021.**

   **SO ORDERED.**

   _____
   Ona T. Wang 1/29/21
   U.S. Magistrate Judge

ny-2036397