UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:
```

VENTURE GROUP ENTERPRISES, INC.,

                  Plaintiff,

-v-

VONAGE BUSINESS INC. f/k/a VONAGE BUSINESS LTD.,

                  Defendant.

No. 20-CV-4095 (RA)

ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Venture Group Enterprises, Inc. ("Venture") brought this action against Defendant Vonage Business Inc. ("Vonage") for breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, and quasi-contract. Vonage counterclaimed for breach of contract and fraud.[1] The dispute centers on a Channel Partner Agreement ("CPA") that the parties entered into in November 2015 for Venture to sell Vonage's Voice over Internet Protocol services.

Pending before the Court is Vonage's motion for summary judgment and motion to exclude the opinions and testimony of Ariel Collins. Vonage argues that it is entitled to summary judgment on Venture's breach of contract claim and its own breach of contract counterclaim because Venture's sub-agents made false and misleading statements to customers, and Venture intentionally hid those misrepresentations from Vonage, thereby breaching Section 8.2.1 of the CPA. Vonage contends that it properly terminated the CPA for cause on August 2, 2019.

---

[1] Vonage also brought counterclaims for civil RICO, civil RICO conspiracy, violations of the New York General Business Law, tortious interference with business relations, and unjust enrichment, but the Court dismissed those counterclaims on September 15, 2021.

The parties do not dispute that Venture's sub-agents did in fact make misrepresentations, and that Venture hid those misrepresentations from Vonage. Venture argues, however, that Vonage's position is barred by the election of remedies doctrine. Under New York law,

> The power to terminate a contract following a breach is one of election, requiring a choice between two inconsistent remedies available for the redress of a wrong. When an executory contract is breached, the non-breaching party to the contract faces two options: he may either continue to perform under the contract or he may terminate the contract. If the non-breaching party elects to continue performance, he may not later choose to terminate the contract on account of the breach.

*Bigda v. Fischbach Corp.*, 849 F. Supp. 895, 901 (S.D.N.Y. 1994) ("*Bigda I*") (internal citations omitted). "The election of remedies doctrine requires knowledge of the alleged breach and an affirmative action that constitutes an election to continue performance." *MBIA Insurance Corp. v. Patriarch Partners VIII, LLC*, 842 F. Supp. 2d 682, 710 (S.D.N.Y. 2012) (citing *Bigda v. Fischbach Corp.*, 898 F. Supp. 1004, 1013 (S.D.N.Y. 1995) ("*Bigda II*")).

In Vonage's reply memorandum of law, it argues that the election of remedies does not apply because it never elected to continue performance under the CPA once it learned of the sub-agent representations. Rather, Vonage asserts that it "became aware of a potentially widespread problem in March 2019, promptly investigated it over a period of five months, and then terminated Venture for cause on August 2, 2019." Def. Reply at 7. There is evidence in the record, however, that contradicts this theory. In particular, in an email dated November 28, 2018, a Senior Director of Customer Care at Vonage wrote to an internal team: "We have 20 examples since October in which Venture group accounts have claimed they were informed that Vonage has taken over Spectrum communications and they must switch." In response, Angelique Electra, who was in-house counsel at Vonage, wrote on November 29: "[T]hese sales issues re Spectrum have to be addressed. If there is a pattern of misrepresentations, that not only seriously breaches the agreement but violates the law." Boyle Decl., Ex. 34.

2

Furthermore, there is evidence that Vonage communicated its concerns to Venture in early 2019 but did not express a desire to terminate the CPA at that time. On January 14, 2019, Thomas Greene, the Vice President of Sales and Operations at Venture, sent an internal email stating:

> Vonage has been receiving complaints *for a while now* of customers being sold using the tactic that 'Vonage has partnered, Bought etc. their current provider' . . . [I]t has been decided by Vonage that when these types of complaints are uncovered (by the Vonage Save Team), Vonage will request the Sales recording. We must supply the recording within 24 hours of Vonage requesting it or we will potentially be in breach of contract.

Boyle Decl., Ex. 27 (emphasis added). Thus, as of early 2019, Vonage was clearly aware of the misrepresentations and objected to the practice, but continued to accept performance from Venture under the CPA, albeit with a new call recording policy. *See Bigda II*, 898 F. Supp. at 1013 (collecting cases) ("[W]here a party merely objects to an alleged breach but continues to perform and to accept the benefits of the breaching party's performance under the contract, he will have elected to continue the contract.").

Even if the non-breaching party elects to continue performance after a breach, however, it still "retains the option of terminating the contract based on other, subsequent breaches." *ESPN, Inc. v. Office of the Commissioner of Baseball*, 76 F. Supp. 2d 383, 388 (S.D.N.Y. 1999); *see also Morrison v. Buffalo Bd. of Educ.*, 741 F. App'x 827, 831 (2d Cir. 2018) (citing *Awards.com, LLC v. Kinko's, Inc.*, 834 N.Y.S.2d 147, 155-56 (1st Dep't 2007)). The record contains evidence of subsequent breaches after January 2019. *See, e.g.*, Fioccola Decl., Ex. 19, 33. The record is less clear, however, as to when Vonage gained knowledge of those subsequent breaches, and whether Vonage elected to continue performance despite such knowledge. *See MBIA Insurance*, 842 F. Supp. 2d at 710 ("[T]he election of remedies doctrine requires knowledge of the alleged breach and an affirmative action that constitutes an election to continue performance."). For

example, while Vonage's Exhibit 33 appears to be a spreadsheet listing over 25 sub-agent misrepresentations from February through April 2019, there is no indication of when this spreadsheet was generated and by whom, or which company representatives had knowledge of the data it contains.  The issue of subsequent breaches was not briefed by either party.

The Court therefore directs the parties to submit supplemental briefing on the question of whether Vonage properly terminated the CPA based on Venture's subsequent breaches in the spring and summer of 2019, and whether the election of remedies defense is otherwise applicable.  The parties may, if necessary, submit revised Rule 56.1 Statements and additional sworn affidavits as well.

The briefing schedule, unless otherwise requested, shall be as follows:

- Vonage's supplemental brief is due April 17, 2023.
- Venture's response is due May 8, 2023.
- Vonage's reply, if any, is due May 15, 2023.

This case shall be stayed pending completion of the supplemental briefing.

SO ORDERED.

Dated:     March 16, 2023
           New York, New York

_____
Ronnie Abrams
United States District Judge