UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VENTURE GROUP ENTERPRISES, INC.,

                Plaintiff,

         v.

VONAGE BUSINESS INC., *f/k/a* VONAGE
BUSINESS LTD.,

                Defendant.

No. 20-CV-4095 (RA)

OPINION & ORDER
ADOPTING REPORT &
RECOMMENDATION

---

RONNIE ABRAMS, United States District Judge:

Defendant Vonage Business Inc. ("Vonage") moves, pursuant to New York Civil Practice Law and Rule (CPRL or Rule 3220), to recover the costs it incurred defeating Plaintiff Venture Group Enterprises, Inc.'s ("Venture") claim for damages. Vonage seeks $4,927,840.96 in expenses from the time it offered to liquidate damages through the Court's decision granting summary judgment in favor of Vonage on October 6, 2023. On July 10, 2024, Magistrate Judge Gary Stein issued a Report and Recommendation ("Report"), recommending denial of Vonage's motion. On July 24, 2024, Vonage submitted objections to the Report. For the reasons that follow, the Court adopts Judge Stein's thorough and well-reasoned Report in its entirety. Vonage's motion to recover expenses under CPRL 3220 is thus denied.

## BACKGROUND[1]

Venture initiated this suit against Vonage on May 28, 2020, alleging that Vonage breached the parties' 2015 Channel Partner Agreement, which set forth the terms of Venture's commission structure for selling Vonage products and services. *See* Compl. ¶¶ 5, 17, 26 (ECF No. 1). Venture

---

[1] The Court assumes the parties' familiarity with the facts and procedural history underlying the motion, as described at length in the Report, and sets forth only those facts necessary for the instant Opinion & Order.

sought at least $10 million in damages for breach of contract and other, related claims. *See id.* ¶¶ 115, 130, 135, 142. On October 5, 2020, Vonage served Venture with "a conditional offer to liquidate damages." Fioccola Decl. ¶ 2, Ex. A (ECF No. 264). The offer would have allowed judgment to be taken against Vonage for $250,000 if Vonage failed to successfully defend against Venture's claims. *Id.* at ¶ 2. Venture rejected the offer. *Id.* ¶ 3.

During discovery, Vonage learned that Venture was aware that its subagents made false representations to potential customers to entice them to buy Vonage services, but that Venture had not disclosed this information to Vonage. *See* Objs. at 8. Vonage then filed counterclaims against Venture, including a claim for breach of contract. *See Venture Grp. Enters. v. Vonage Bus. Inc.*, No. 20-cv-4095, 2023 WL 6540703, at *5 (S.D.N.Y. Oct. 6, 2023). On March 16, 2023, Vonage moved for summary judgment on Venture's claims, as well as on its own breach of contract claim against Venture. *Id.* On October 6, 2023, the Court granted Vonage's motion for summary judgment in full but left the issue of damages on Vonage's breach of contract claim to be determined at trial. *Id.* at *12.[2]

On January 5, 2024, Vonage filed a motion for expenses under Rule 3220, seeking $4,927,840.96 in attorneys' fees and expenses from October 6, 2020, the day it made its offer to liquidate damages, through August 1, 2023, its last time entry made before the Court's ruling on summary judgment on October 6, 2023. *See* Fioccola Decl. ¶ 5 & nn.1–2 (ECF No. 264). This Court referred Vonage's motion to Magistrate Judge Ona Wang for a Report and Recommendation on January 19, 2024, *see* ECF No. 280; the case was subsequently reassigned to Magistrate Judge Gary Stein, *see Venture Grp. Enters., Inc. v. Vonage Bus. Inc.*, No. 20-cv-4095, 2024 WL 3363335,

---

[2] Vonage also brought a fraud counterclaim against Venture, but advised the Court in December 2023 that it would no longer pursue that claim. *See* ECF No. 250.

at *2 n.1 (S.D.N.Y. July 10, 2024) (herein, "Report"). In his Report, Judge Stein recommended that Vonage's motion be denied. *See id.* at *1, *11. On July 24, 2024, Vonage filed timely objections to the Report. *See* ECF No. 323.

## LEGAL STANDARD

In reviewing a magistrate judge's report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see* Fed. R. Civ. P. 72(b)(3). "Whereas the court must make a de novo determination of the portions of the report to which timely objections are made, with respect to the uncontested portions of a report and recommendation, a district court need only satisfy itself that there is no clear error on the face of the record." *Gomez v. Brown*, 655 F. Supp. 2d 332, 341 (S.D.N.Y. 2009).[3] If objections are made but they are "nonspecific or merely perfunctory responses . . . argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition," the clear error standard applies. *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 & n.4 (2d Cir. 2022). Because Vonage's objections are specific and not merely perfunctory, the Court will consider the aspects of the Report to which Vonage objects de novo.

## DISCUSSION

### I. Preemption

Neither party objects to the Report's conclusion that CPLR 3220 is not preempted by Federal Rule of Civil Procedure 68. The Court, thus, reviews the issue of preemption for clear error.

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, omissions, and alterations.

First, the Court agrees that there is no conflict of law between Rule 68 and CPLR 3220. "It is settled that if [a Federal Rule of Civil Procedure] in point is consonant with the Rules Enabling Act, . . . and the Constitution, the Federal Rule applies regardless of contrary state law." *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 n.7 (1996). In other words, where a federal rule controls, a federal court sitting in diversity need "not wade into *Erie*'s murky waters unless the federal rule is inapplicable or invalid." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Where a federal rule, however, is not "sufficiently broad" such that it "cause[s] a direct collision with the state law, or implicitly to control the issue," *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4–5 (1987), a court should not find the federal rule and state law to be in "conflict," and next consider the "policies behind" the *Erie* doctrine, *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752 (1980). *See also Gasperini*, 518 U.S. at 428 n.7 (noting that "[f]ederal courts have interpreted the Federal Rules . . . with sensitivity to important state interests and regulatory policies," and citing as an example a Seventh Circuit decision holding that a "state provision for offers of settlement by plaintiffs is compatible with . . . Rule 68, which is limited to offers by defendants").

Rule 68 and CPLR 3220 serve different purposes and provide different remedies. Rule 68(d) states that, when an offeree fails to accept an offer under the Rule, "[if] the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d). As Judge Stein recognized, unlike Rule 68, CPLR 3220 "is not an offer-of-judgment statute," but rather, "much narrower"—"if accepted, [it] does not terminate the ligation because the issue of liability remains." Report, 2024 WL 3363335 at *5. The Court agrees with Judge Stein's assessment that "nothing . . . would prevent [a] defendant [] from making both an offer . . . under CPLR 3220 (allowing it to recover .

4

. . fees associated with trying the issue of damages whether it prevails on liability or not) and an offer . . . under Rule 68 (allowing it to recover . . . costs if [a] plaintiff obtains a judgment less than the offer)." *Id.*[4] Therefore, Rule 68 "leave[s] room for the operation of" CPLR 3220. *Burlington N. R.R. Co.*, 480 U.S. at 4–5.

With no "direct collision" between Rule 68 and CPLR 3220, *id.*, the Court turns to the second part of the analysis, and agrees with Judge Stein's determination that CPLR 3220 is a substantive state law that must be applied in the instant action. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1968). As Judge Stein explained in the Report, "[s]tate law creates the substantive right to attorney's fees, a right which cannot be deprived" by applying the federal rule. *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992); *see also Cotton v. Slone*, 4 F.3d 176, 180 (2d Cir. 1993) ("Attorney's fees mandated by state statute are available when a federal court sits in diversity.").

For these reasons, the Court agrees with Judge Stein that CPLR 3220 is not preempted by Rule 68, and that it applies to this action.

---

[4] The Court further notes, as did Judge Stein, that the New York state-law counterpart to Rule 68 is CPLR 3221, which provides that

> any party against whom a claim is asserted, . . . may serve upon the claimant a written offer to allow judgment to be taken against him for a sum . . . , with costs then accrued. . . . If the offer is not accepted and the claimant fails to obtain a more favorable judgment, he shall not recover costs from the time of the offer, but shall pay costs from that time.

CPLR § 3221; *see also Vera v. Trans-Cont'l Credit & Collection Corp.*, No. 98-cv-1866, 1999 WL 292623, at *2 (S.D.N.Y. May 10, 1999) (characterizing CPLR 3221 as "the New York equivalent" to Rule 68).

**II. Application of CPLR 3220 to Victory at Summary Judgment**

Because Vonage objects to the Report's conclusion that CPLR 3220 does not provide recovery when a defendant prevails on summary judgment—as opposed to at trial—the Court examines this issue de novo.

CPLR 3220 covers "offer[s] to liquidate damages conditionally." Under the Rule, at least "ten days before trial, any party against whom a cause of action based upon contract . . . is asserted may serve upon the claimant a written offer to allow judgment to be taken against [it] for a sum therein specified, with costs then accrued," if that party "fails in [its] defense." *Id.* "If the offer is not so accepted and the claimant fails to obtain a more favorable judgment, [it] shall pay the expenses necessarily incurred by the party against whom the claim is asserted, for trying the issue of damages from the time of the offer." *Id.* Such expenses are to be "ascertained by the judge or referee before whom the case is tried." *Id.*

In the Report, Judge Stein concluded that CPLR 3220 does not afford relief where a defendant prevailed on summary judgment without a trial. *See* Report, 2024 WL 3363335, at *7. He based this conclusion on "[t]he plain language of CPLR 3320" which, he said, "appears to contemplate a trial before the defendant is entitled to recover its expenses." *Id.* In so doing, Judge Stein rigorously examined New York courts' analysis of CPLR 3220, and interpreted the case law as "reject[ing] the more expansive, atextual reading advanced by Vonage," and instead endorsing a view that "commencement of trial [is] a condition precedent to an award." *Id.* at 9. Finally, Judge Stein considered and rejected the policy reasons Vonage advances in support of its argument—"that it would be more logical and consistent with the policy goals of CPLR 3220 if defendants who prevail on summary judgment after making an offer to liquidate damages were entitled to recover their attorney's fees." *Id.*

The New York Court of Appeals has not addressed the scope or application of CPLR 3320. When deciding a question of unsettled state law, federal courts are "obligated to carefully predict how the state's highest court would resolve the uncertainty or ambiguity." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020). To do so, federal courts may look to various "resources," including "the statutory language, pertinent legislative history, the statutory scheme set in historical context, how the statute can be woven into the state law with the least distortion of the total fabric, state decisional law, federal cases which construe the state statute, scholarly works and any other reliable data." *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994).

First, Vonage objects to the Report's textual reading of CPLR 3220. As the New York Court of Appeals has noted, "the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof." *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 696 N.E.2d 978, 980 (N.Y. 1998); *see also Zivkovic v. Laura Christy, LLC*, No. 17-cv-553, 2022 WL 1697991, at *2 (S.D.N.Y. May 26, 2022) ("The New York Court of Appeals has held repeatedly that where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning."). "As a general proposition," a court "need not look further than the unambiguous language of the statute to discern its meaning." *Jones v. Bill*, 890 N.E.2d 884, 886 (N.Y. 2008).

CPLR 3220 states that if an "offer is not . . . accepted and the claimant fails to obtain a more favorable judgment, he shall pay the expenses necessarily incurred by the party against who the claim is asserted, *for trying the issue of damages* from the time of the offer." CPLR § 3220 (emphasis added). Vonage argues that the term "try" as used in the statute has a "considerably broader meaning" than merely to resolve an issue by a trial, and instead means to "examin[e] a

7

matter judicially." *See* Objs. at 3–4 (citing *Nixon v. United States*, 506 U.S. 224, 229–30 (1993)). The Court disagrees. First, although the term "try" may mean different things in different contexts, the Court agrees with the Report that its plain meaning in "common parlance" is to go to trial. *See* Report, 2024 WL 3363335, at *7.

Vonage cites *Nixon v. United States* in support of its argument that to "try" a case includes "examining a matter judicially, as was done here after a full and fair opportunity for discovery and exclusive briefing." Objs. at 3–4 (citing 506 U.S. 224, 229–30 (1993)). But the Supreme Court's analysis of the word "try" arose in a very different context. In *Nixon*, the Supreme Court considered "the scope of authority conferred upon the Senate by the Framers" by the Impeachment Trial Clause in Article I of the United States Constitution. *Nixon*, 506 U.S. at 229. In doing so, it explained that the phrase to "try" has a "variety of definitions," including "to examine or investigate judicially," and concluded that it "cannot say that the Framers used the word 'try' as an implied limitation on the method by which the Senate might proceed in trying impeachments." *Id.* at 230.

In reaching this conclusion, the Supreme Court looked at the broader text of the clause in which the phrase appears. *Id.* Considering the broader language of CPLR 3220, it is clear that to "try" a claim refers to a trial. Indeed, CPLR 3220 specifically refers to "the judge or referee before whom the case is tried" and even contemplates a jury trial. *See* CPLR 3220 ("An offer under this rule shall not be made known to *the jury*." (emphasis added)); *see also id.* (stating that where an offeree accepts an offer of liquidated damages, "and damages are awarded to him *on the trial*, they shall be assessed in the sum specified in the offer" (emphasis added)). As the Report rightly recognized, New York courts to have considered the meaning of "trial" have determined that it refers, in fact, to the act of having of a trial. *See Vizzi v. Town of Islip*, 336 N.Y.S.2d 520, 522

(N.Y. Sup. Ct. 1972) ("[S]ummary judgment is not a 'trial.'"); *Greiss v. Feldman*, 228 N.Y.S.2d 381, 382 (Sup. Ct. 1962), *aff'd*, 247 N.Y.S.2d 1014 (N.Y. App. Div. 1964) ("A summary judgment proceeding is not a trial but merely a proceeding to determine if there are triable issues of fact that require a trial." (quoting *Collins v. Toombs*, 63 N.Y.S.2d 545, 546–47 (N.Y. App. Div. 1946))).

In any event, the New York Court of Appeals is not bound by the Supreme Court's analysis of the term "trial." *See Erie R.R. Co.*, 304 U.S. at 78 ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."); *Bocre Leasing Corp. v. Gen. Motors Corp. (Allison Gas Turbine Div.)*, 20 F.3d 66, 67 (2d Cir. 1994) (recognizing that, where "the New York Court of Appeals has not yet spoken on [an] issue," and "the state's intermediate appellate courts have reached conflicting results," a court may still decline to adopt an approach taken by the United States Supreme Court); 28 U.S.C. § 1652 ("The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply.").

Second, Vonage objects to the Report's interpretation of the legislative history and purpose of the statute, arguing that "Rule 3220 has existed as a mechanism to encourage early resolution of meritless contract claims since 1846." *See* Objs. at 4; *see also* Vonage Reply Br. at 6 & n.7 (citing N.Y. – 71st Legis. Chap. 379 §§ 339–40 (1848)). Vonage argues that the text of the "earliest iteration of Rule 3220," enacted in 1846, shows that "legislators . . . envisioned that expenses recoverable under the rule broadly included those incurred" in defending the question of damages at any stage in the litigation. Vonage Reply Br. at 5–6. The Court disagrees. Vonage quotes only a small portion of the 1846 statute, which provides that if the plaintiff is awarded damages in a sum less than the defendant offered, "the defendant shall recover his expenses, incurred in

9

consequence of any necessary preparation or defence in respect to the question of damages." N.Y. – 71st Legis. Chap. 379 § 340 (1848). Vonage, however, tellingly leaves out the next sentence which states that, "Such expenses shall be ascertained *at the trial*." *Id.* (emphasis added). The provision also states that, if the plaintiff accepts the offer, and "on the *trial* [has] a verdict, the damages shall be assessed accordingly." *Id.* at § 339 (emphasis added). Vonage also points the Court to a 1920 version of the law, which provides that a defendant is entitled to "expenses necessarily incurred . . . in preparing for the *trial* of the question of damages." Reply Br. at 6 n.7 (quoting N.Y. – 143rd Legis. 19, Chap. 925 §§ 175–76 (1920)) (emphasis added). The 1920 version of the law further states that if the plaintiff accepts the offer, damages will be "awarded to him on the *trial*." N.Y. – 143rd Legis. 19, Chap. 925 § 175 (1920) (emphasis added). Based on the plain text of these earlier versions of CPLR 3220, which all contemplate a trial taking place, the Court is unpersuaded by Vonage's argument that the statutory history establishes that the legislature meant the word "try" to mean "examining a matter judicially," including at the summary judgment stage. Objs. at 4.

Vonage next objects to the Report's analysis of New York State courts' interpretation of Rule 3220, arguing that it discounted the import of *Morgan v. Kunker*, 704 N.Y.S.2d 158 (N.Y. App. Div. 2000), and instead over-relied on *Saul v. Cahan*, 61 N.Y.S.3d 116 (N.Y. App. Div. 2017). *See* Objs. at 2. According to Vonage, *Morgan* held that CPLR 3220 applies even where a court finds liability on summary judgment, and thus controls here, whereas *Saul*'s holding that CPLR 3220 does not apply at the pleadings stage is inapposite. *See id.*

"In determining how the Court of Appeals would rule on this legal question, the decisions of New York State's Appellate Division are helpful indicators." *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000). Vonage correctly notes that the holding of "'an intermediate

10

appellate state court . . . is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Id.* (quoting *West v. AT&T Co.*, 311 U.S. 223, 237 (1940)). That said, although "[d]ecisions of New York's intermediate appellate courts are helpful indicators of how the Court of Appeals would decide," this Court is not "strictly bound" by any particular Appellate Division decision. *Zivkovic*, 2022 WL 1697991, at *2.[5]

In *Morgan v. Kunker*, the New York Appellate Division, Third Department, addressed "the legal obligations of the parties arising from a settlement agreement entered into after a failed real estate transaction," and granted summary judgment for the defendants. 704 N.Y.S.2d at 750. At the end of the opinion, without substantively discussing CPLR 3220, the court ordered that "by virtue of defendants' offer to liquidate damages pursuant to CPLR 3220 in the amount of $75,000, and said offer having been rejected by plaintiff, the matter must be remitted to Supreme Court solely for a determination of defendants' necessary expenses." *Id.* at 751. By contrast, in *Saul v. Cahan*, the Second Department reversed the lower court's award of expenses under CPLR 3220 to the defendant following the defendant's successful motion to dismiss the claims against him. *See* 61 N.Y.S. 3d at 118.[6] In doing so, it discussed CPLR 3220 in detail, and held that "the commencement of a trial is a condition precedent to imposing liability upon the claimant for the opposing party's expenses." *See id.* at 119.

---

[5] A federal court may, moreover, decline to follow a state appellate division decision if the statutory language supports an alternative holding. *See City of New York v. Golden Feather Smoke Shop, Inc.*, No. 08-cv-3966, 2009 WL 2612345, at *29 (E.D.N.Y. Aug. 25, 2009).

[6] Despite awarding damages under CPLR 3220, the lower *Saul* court expressed doubt about the precedent set by *Morgan*, and stated that its decision ultimately hinged on the fact that "the doctrine of *stare decisis* require[d it] to follow the precedent of the Third Department Appellate Division until the Court of Appeals or the Second Department Appellate division pronounce[d] a contrary rule." *Saul v. Cahan*, 50 Misc. 3d 1228(A), at *2 (N.Y. Sup. Ct. 2016).

Where there is "an apparent split in authority among the Appellate Divisions," as there is here between *Morgan* and *Saul*, "the proper approach [is] for the trial court . . . to . . . essay[] a prediction on [how] the New York Court of Appeals would rule." *Michalski*, 225 F.3d at 116–17.[7] As detailed in Judge Stein's thorough review, the vast majority of New York courts to have addressed the issue of when CPLR 3220 applies have held that it is a mechanism for recouping expenses only after a trial has commenced. *See* Report, 2024 WL 3363335, at *7–9.

For example, in *OLS Limousine Services, Inc. v. Century Business Solutions*, the state supreme court held that a defendant was not entitled to relief under CPLR 3220 where it won at summary judgment. *See* No. 601366/2017, 2021 N.Y. Misc. LEXIS 57406, at *4 (N.Y. Sup. Ct. Sept. 30, 2021). In so doing, the court rejected the defendant's "attempts to distinguish *Saul v. Cahan*[] on the grounds that the case involved a . . . motion to dismiss rather than a . . . motion for summary judgment"—the same argument Vonage sets forth in its objections. *Id.* at *3. And it specifically rebuffed the defendant's argument that the "granting of . . . a motion for summary judgment is the procedural equivalent of a trial." *Id.* at *4. Instead, the court held that "[t]he language of CPLR 3220 is clear and unambiguous and the provision does not apply where, as here, there has been no trial of damages." *Id.*

Similarly, in *Loeb Enterprises II LLC v. Florence*, the court denied the defendants recovery under CPLR 3220 on the basis that the statute "only permits a party to recover attorney's fees after a trial has . . . commenced." *See* No. 653521/2018, 2020 WL 2572387, at *3 (N.Y. Sup. Ct. Apr.

---

[7] Vonage suggests that, should this Court conclude that the state lower courts are in conflict, it certify the question to the New York Court of Appeals. *See* Objs. at 3 n.3. "Regrettably, New York law does not authorize federal district courts to certify questions to the New York Court of Appeals." *Olin Corp. v. Lamorak Ins. Co.*, No. 84-cv-1968, 2018 WL 4360775, at *2 n.3 (S.D.N.Y. Aug. 17, 2018); *see also* N.Y. Comp. Codes R. & Regs. tit. 22 § 500.27(a) (stating that the United States Supreme Court, any United States Court of Appeals, and courts of last resort of any other state may certify questions to the New York Court of Appeals). If this Court's decision is appealed to the Second Circuit, that court may opt to certify this question. *See Golden Feather Smoke Shop, Inc.*, 2009 WL 2612345, at *29 n.7.

7, 2020) (so holding where the case had only progressed to the "discovery stage"); *see also Birnbaum LLC v. Park*, No. 650578/2011, 2013 WL 317578, at *4 (N.Y. Sup. Ct. Jan. 24, 2013) (explaining that, "under CPLR 3220, [the plaintiff] would be eligible for an award of . . . expenses only if [the defendant's] liability is established at trial").

In *First Equity Realty v. The Harmony Group II*, moreover, the court considered whether the defendants were entitled to relief under CPLR 3220 for two claims, one which went to trial and the other which was voluntarily dismissed. No. 650273/2015, 2022 WL 11228746, at *2 (N.Y. Sup. Ct. Oct. 19, 2022). The court granted relief only for the count which proceeded to trial, and not for the one that had been withdrawn, holding that "the most reasonable reading of CPLR 3220 is that there can be no recovery of expenses . . . because *that claim* did not proceed to trial." *Id.* at *5; *see also Hirsch v. City Store Front Gates Mfg. Corp.*, 334 N.Y.S.2d 942, 943 (N.Y. Civ. Ct. 1972) (describing CPLR 3220 as providing "the actual trial costs and attorney's fees expended by the defendant as a consequence of his defending the 'damages' portion of the trial, commencing from the date of the offer, to the trial itself").

After surveying the state case law on the issue, most of which were decided more recently than *Morgan*, the Court agrees with Judge Stein that *Saul* and the New York State supreme court decisions holding that relief under CPLR 3220 is only triggered by the commencement of trial are more indicative of how the New York Court of Appeals would rule than is *Morgan*'s cursory treatment of the issue.[8] For that reason, the Court rejects Vonage's objections to the Report.

---

[8] As the Report points out, "in the 24 years since *Morgan* was decided, no court has cited it for the proposition advanced by Vonage—save for the lower court's decision in *Saul*, which was promptly reversed by the Second Department." Report, 2024 WL 3363335, at *9; *cf. Century Sur. Co. v. Metro. Transit Auth.*, No. 20-1474, 2021 WL 4538633, at *4 (2d Cir. Oct. 5, 2021) (determining that more recent decisions are "more probative of how the New York Court of Appeals would decide [an] issue," albeit when considering conflicting appellate decisions within the same Department).

### III. Waiver

Vonage further objects to the Report's failure to "address [its] argument that Venture waived its defenses to the application of Rule 3220 . . . by serving its own Rule 3220 offer." Objs. at 5. Venture responds that had it sought to recover expenses under its own Rule 3220 offer for Vonage's counterclaim, "that position would not conflict" because the parties went to trial on the issue of Vonage's damages. Resp. to Objs. at 13. The Court, upon a de novo review, agrees with Venture's position. Venture's act of serving a conditional offer upon Vonage under Rule 3220 does not preclude Venture's ability to challenge the validity of Vonage's attempts to recover under Vonage's conditional offer upon Venture, and Vonage fails to point the Court to any case law stating as such.

### IV. Expenses

Finally, the Report recommended that, even were Vonage entitled to expenses under CPLR 3220, the amount it sought to recover was a "massive overreach" because "Vonage seeks recovery of virtually all fees incurred in litigating both liability and damages," but CPLR 3220 "plainly requires that the court distinguish between the two and limit any award to damages issues only." Report, 2024 WL 3363335 at *10. Vonage objects, arguing that liability and damages are "indivisibly linked." Objs. at 6. It also argues in the alternative that, even if the Court were to award expenses related only to the litigation of damages, the Report erred by "making broad, unsupported assumptions that *none* of Vonage's requested . . . fees . . . were incurred in litigating damages." *Id.* Because the Court determines that Vonage is not entitled to recovery of any fees under CPLR 3220, it need not address this objection further.

**CONCLUSION**

    For the foregoing reasons, Vonage's motion for expenses under CPLR 3220 is DENIED.

The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 262.

Dated:    September 23, 2024
            New York, New York

                                                Ronnie Abrams
                                                United States District Judge