UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
VENTURE GROUP ENTERPRISES, INC.,  :
                                    :
      Plaintiff-Counterclaim Defendant,  :
                                    :
      - against -  :
                                    :
VONAGE BUSINESS INC., f/k/a  :
VONAGE BUSINESS LTD.,  :
                                    :
      Defendant-Counterclaim Plaintiff.  :
----------------------------------------------------------------X

**20 Civ. 4095 (RA) (GS)**

**OPINION & ORDER**

**GARY STEIN, United States Magistrate Judge:**

Pending before the Court is a motion for costs filed by Defendant Vonage

Business Inc. ("Vonage") seeking to recover its attorney's fees from Plaintiff Venture

Group Enterprises, Inc. ("Venture") in connection with: (1) a provisional motion to

seal filed by Vonage on October 5, 2022 (Dkt. No. 195); (2) a motion to seal filed by

Venture on October 5, 2022 (Dkt. No. 200); (3) a motion to seal filed by Venture on

October 7, 2022 (Dkt. No. 211); and (4) litigation concerning the production of audio

recordings from a non-party.  (Dkt. No. 208).  For the reasons set forth below,

Vonage's motion for costs is hereby **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

### A.  Procedural History

In 2015, Venture and Vonage entered into a Channel Partner Agreement

("CPA") pursuant to which Venture sold Vonage's voice over internet protocol

("VOIP") services through a network of sub-agents.  After Vonage terminated the

CPA for cause, Venture commenced this action in August 2019, claiming breach of

the CPA.  (Dkt. No. 1).  Vonage counterclaimed, charging Venture with, among other things, breach of the CPA and common law fraud.  (Dkt. No. 14 ¶¶ 125-78; *see* Dkt. No. 104 (granting Venture's motion to dismiss Vonage's other counterclaims)).

Fact discovery lasted for over a year.  As in most commercial disputes of this nature, at the outset of discovery the parties agreed to a Stipulation and Protective Order (the "Protective Order"), so-ordered by the Honorable Ona T. Wang on November 2, 2020, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. (Dkt. No. 51).  The Protective Order allowed both sides to designate as confidential information and documents exchanged in connection with the pretrial phase of the action.  (*Id.*).  The following month, the parties agreed to an Addendum to the Protective Order, which was also so-ordered by Judge Wang, that allowed Venture to designate as "highly confidential" a document listing its sub-agents that it intended to produce to Vonage.  (Dkt. No. 67).[1]

At the close of discovery, Vonage moved for summary judgment on all of Venture's claims and on its own breach of contract counterclaim.  (Dkt. Nos. 159-66).  In an Opinion & Order dated October 6, 2023, the Honorable Ronnie Abrams granted Vonage's summary judgment motion in full.  (Dkt. No. 237).  The issue of damages on Vonage's breach of contract counterclaim was tried before Judge Abrams in August 2024.[2]  (Dkt. Nos. 246 & 305).  In an Opinion & Order

---

[1]  The highly confidential designation meant that the list would only be disclosed to Vonage's outside counsel in this action and could not be disclosed to Vonage itself.  (*Id.*).

[2] The parties stipulated to dismissal of Vonage's fraud counterclaim prior to trial.  (Dkt. No. 294 at 10).

dated October 16, 2024, Judge Abrams denied Vonage's request for liquidated damages pursuant to the CPA and awarded Vonage only $1 in nominal damages for commissions it paid to Venture and for lost profits. (Dkt. No. 346).

In addition to the parties' substantive claims, the litigation has spawned a number of motions for sanctions and costs. Following Judge Abrams' dismissal of Venture's claims on summary judgment, Vonage moved for an award of costs pursuant to CPLR 3220. That motion was denied. (Dkt. Nos. 319 & 345). Similarly, after Judge Abrams awarded Vonage only $1 in nominal damages on its breach of contract counterclaim, Venture made its own motion for costs under CPLR 3220. That motion, too, was denied. (Dkt. Nos. 373 & 376).

### B. The September 2022 Order

The current motion has its genesis in an Opinion & Order issued on September 30, 2022[3] by Judge Wang, the magistrate judge then assigned to this action.[4] (Dkt. No. 194 (the "September 2022 Order")). The September 2022 Order primarily resolved Vonage's motion for case-terminating and other sanctions, pursuant to Rule 37(e)(2) of the Federal Rules of Civil Procedure, based on Venture's alleged failure to record or preserve the entirety of sales calls placed by Venture's sub-agents to prospective customers. (*See* Dkt. No. 113). Judge Wang denied that motion, as well as Venture's cross-motion for sanctions for having to defend against the motion. (Dkt. No. 194 at 4-7).

---

[3] Although dated September 30, 2022, the Order was not entered on the docket until the following Monday, October 3, 2022.

[4] On April 1, 2024, the action was redesignated to the undersigned.

The September 2022 Order, however, also expressed concern that "certain of Venture's representations to the Court back in February 2021 were incorrect and may have led to unnecessary motion practice[.]" (*Id.* at 7).  Those representations pertained to Vonage's ability to obtain recordings of the sales pitch calls from a third-party vendor used by Venture, TrustedTPV ("TPV").  Based on Venture's representations that the recordings from TPV were equally accessible to Venture and Vonage, Judge Wang, in orders issued in February 2021, required Vonage to detail its efforts to obtain recordings from TPV and declined to award costs to Vonage for reviewing certain documents.  (Dkt. Nos. 75 & 78).  As it turned out, according to the September 2022 Order, "such efforts would have been futile" because TPV needed Venture's permission before releasing any recordings to Vonage.  (Dkt. No. 194 at 7-8).

In addition, the September 2022 Order addressed motions filed by Venture to seal certain documents filed in connection with Vonage's motion for sanctions.  (*See* Dkt. Nos. 118 & 125).  Judge Wang denied those motions as "without merit," finding that they merely repeated the relevant legal standard "without applying it to particular documents or portions of documents sought to be sealed, in contravention of my Individual Practices as well as the case law in this Circuit."  (Dkt. No. 194 at 8).  She directed Vonage to file, by October 7, 2022, a motion for costs incurred in attempting to resolve these motions to seal.  (*Id.*).  Judge Wang also denied, for the same reasons, other sealing motions filed by Venture.  (*Id.* (denying motions at Dkt. Nos. 158 and 173)).

4

Finally, Judge Wang stayed her denials of Venture's sealing motions pending submission of a "proper single motion to seal from Venture that conforms with my Individual Practices and that provides proposed (and preferably agreed) redactions." (*Id.*).  Venture was directed to file such a motion by October 7, 2022. (*Id.*).  Judge Wang warned Venture that "if the Court finds that a further motion to seal is not substantially justified under Fed. R. Civ. P. 37(a)(5), it <u>will</u> apportion or award costs under that Rule." (*Id.* at 8-9 (emphasis in original)).

### C.  Vonage's Motion for Costs

On October 7, 2022, Vonage, as directed by Judge Wang, filed its motion for costs based on Venture's motions to seal related to Vonage's motion for sanctions under Rule 37(e)(2).  (Dkt. No. 208).  Accompanying the motion were a supporting memorandum of law (Dkt. No. 209) and a declaration from one of Vonage's attorneys (Dkt. No. 210).

Vonage's motion for costs was not, however, limited to the previously filed motions to seal.  The parties also were then in the midst of briefing Vonage's motion for summary judgment.  On October 5, 2022, Vonage filed its reply papers in support of its summary judgment motion, including a reply brief and a response to Venture's Rule 56.1 Counterstatement.  (*See* Dkt. Nos. 198-99).  On the same day, Vonage filed a provisional motion to seal materials discussed in its reply papers that Venture had designated as confidential under the Protective Order and sought to maintain under seal in connection with prior briefing on the summary judgment motion.  (Dkt. No. 195).  Vonage took the position that, in light of the September

5

2022 Order, Venture should have agreed to de-designate the purportedly confidential documents and allow Vonage to file its reply papers without redactions. (*Id.* at 1). Venture declined to do so. (*Id.*). As a result, in its October 7, 2022 motion for costs, Vonage also sought to recover its costs associated with preparing a redacted version of its reply papers, filing sealed and unsealed versions, and filing its provisional sealing motion. (Dkt. No. 209 at 9).

In addition, picking up on the suggestion in the September 2022 Order that Venture had made misrepresentations concerning Vonage's ability to obtain audio recordings from TPV, Vonage contended that "fairness requires reimbursing [its] costs" related to those purported misrepresentations as well. (*Id.* at 7-8). These costs, according to Vonage, include its attorney's fees in attempting to obtain recordings from TPV, preparing letters to the Court describing those efforts, and preparing an affidavit from a TPV employee regarding the issue. (*Id.* at 8).

Meanwhile, on October 5, 2022, Venture filed an additional letter motion seeking to seal various documents attached to two declarations Venture was submitting as part of its opposition to Vonage's *Daubert* motion to exclude the testimony of Venture's expert witness on damages. (Dkt. No. 200). This motion to seal was accompanied by a declaration from Venture's General Counsel and Chief Information Officer, Jim Price. (Dkt. No. 213 ("Price Declaration")).[5] Vonage opposed this motion to seal in a letter dated October 11, 2022. (Dkt. No. 212).

---

[5] A deficient version of the Price Declaration was originally filed on October 5, 2022. (Dkt. No. 201). A corrected version was filed on October 12, 2022. (Dkt. No. 213).

Responding to the directive in the September 2022 Order, Venture submitted another letter on October 7, 2022.  (Dkt. No. 211).  That letter de-designated the confidentiality designations on all documents as to which Venture had previously sought sealing in connection with Vonage's motion for sanctions.  (*Id*. at 2).  Venture also de-designated as confidential most, but not all, of the documents as to which sealing was sought in connection with Vonage's summary judgment motion and *Daubert* motion.  (*Id*. at 2-3).  In support of its request to maintain sealing as to some of those documents, Venture relied on the arguments in its October 5, 2022 letter and on the Price Declaration.  (*Id*. at 3).  Vonage responded in a letter dated October 13, 2022.  (Dkt. No. 214).

On October 21, 2022, Venture submitted its opposition brief to Vonage's motion for costs (Dkt. No. 216), along with a declaration from its outside counsel (Dkt. No. 217).  Vonage submitted its reply brief on October 28, 2022.  (Dkt. No. 219).  In its reply brief, Vonage not only continued to argue for an award of costs as to the matters set forth in its opening brief—*i.e.*, the motions to seal related to Vonage's prior motion for sanctions, the provisional motion to seal related to Vonage's reply in support of its summary judgment motion, and Vonage's efforts related to obtaining recordings from TPV—but also expanded its motion to encompass Venture's additional motions to seal on October 5, 2022 (Dkt. No. 200) and October 7, 2022 (Dkt. No. 211).

### D.  The October 2022 Order

Judge Wang issued an Order on October 25, 2022, unsealing the documents Venture had agreed to de-designate as confidential.  (Dkt. No. 218 (the "October 2022 Order") at 1).  The October 2022 Order also denied Venture's October 5 and October 7, 2022 letter motions to seal (Dkt. Nos. 200 & 211).  With regard to a document containing the names of Venture's sub-agents, Judge Wang found that Venture had failed to explain why the names of its agents should remain under seal and, further, noted that each subagent had been listed in a publicly filed document without any sealing request.  (Dkt. No. 218 at 2).  With regard to other documents as to which Venture continued to seek sealing, Judge Wang found that Venture "still does not propose redactions" to certain documents, "in direct contravention of the Court's Individual Practices and its September 30, 2022 order," and that Venture's broad assertions that the documents contain proprietary and sensitive business information were "not sufficiently specific enough to justify sealing."  (*Id.* at 2-3).

### E.  The December 2023 Order

On December 19, 2023, Judge Wang issued an Opinion & Order addressing Vonage's motion for costs as it pertained to the sealing motions related to Vonage's motion for Rule 37(e)(2) sanctions.  (Dkt. No. 255 (the "December 2023 Order")).  The Court granted Vonage's motion in this respect and awarded Vonage $24,643.63 in fees and costs incurred in connection with those motions to seal, *i.e.*, Dkt. Nos. 118 & 125.  (*Id.* at 1-2).

The December 2023 Order also stated that "Vonage is likely entitled to fees under Rule 37(a)(5) for Venture's later sealing motions," *i.e.*, Dkt. Nos. 200 & 211. (*Id.* at 3).  Those motions, the Order stated, "were denied in their entirety and were not substantially justified." (*Id.*).  At the same time, Judge Wang recognized that because Vonage only sought fees for responding to these motions in its reply brief, Venture had not had an opportunity to respond to Vonage's arguments. (*Id.*).  In a separate Order issued the following day, Judge Wang directed Vonage to advise the Court by January 12, 2024 whether it wished to renew its motions for fees in connection with Venture's later filed motions to seal (Dkt. Nos. 200 & 211), Vonage's provisional motion to seal (Dkt. No. 195), and the TPV recordings issue. (Dkt. No. 256).  The Order further directed Vonage to confer with Venture and propose a briefing schedule for any renewed motion. (*Id.*).

On January 12, 2024, Vonage submitted a letter stating that Venture declined the opportunity for further briefing before Judge Wang. (Dkt. No. 269).  Accordingly, the letter stated, Vonage's motion for fees incurred in connection with the sealing motions at Dkt. Nos. 200 & 211, the provisional motion to seal at Dkt. No. 195, and the TPV recordings issue was fully briefed. (*Id.*).

## F.  Judge Abrams' Ruling Vacating the December 2023 Order

Although Venture did not submit further briefing with respect to the unresolved portions of Vonage's motion for costs, it did file objections to Judge Wang's award of $24,643.63 in costs to Vonage in her December 2023 Order based on the motions to seal at Dkt. Nos. 118 & 125. (Dkt. No. 261).  Among other things,

Venture's objections argued that the Court lacked authority to impose an award of costs under Rule 37(a)(5) based on an unsuccessful motion to seal, as motions to seal are not governed by discovery rules. (*Id.* at 8-11). Venture also argued that, even if Rule 37(a)(5) did apply, there was substantial justification for its position on the sealing issues, rendering an award of costs unwarranted. (*Id.* at 11-15). Vonage responded to Venture's objections on January 16, 2024. (Dkt. No. 275).

Judge Abrams heard oral argument on November 7, 2024 and then vacated the December 2023 Order's award of costs to Vonage. (Dkt. Nos. 351 & 352 ("Tr.")). During the argument, Judge Abrams noted that the Court had been unable to find a case awarding sanctions based on an unsuccessful motion to seal; counsel for both parties did not identify any such cases either. (Tr. at 8:23-9:10). Ultimately, Judge Abrams found it unnecessary to rule on whether Rule 37(a)(5) was applicable in such a circumstance. Instead, "assum[ing] without deciding that Rule 37 does apply," Judge Abrams found that, although Judge Wang correctly denied Venture's motions to seal at Dkt. Nos. 118 & 125, the motions were substantially justified. (Tr. 15:11-18, 16:2-4, 17:11-18:10). Consequently, the Court sustained Venture's objections. (Tr. 18:11-13; Dkt. No. 351).

## LEGAL STANDARDS

Rule 37 of the Federal Rules of Civil Procedure governs motions for orders compelling disclosure or discovery. Rule 37(a)(5) authorizes an award of expenses to the prevailing party on such a motion in certain circumstances. Specifically, in cases where the motion is denied, the Rule provides as follows:

10

> If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(B).

Whether a party was "substantially justified" in making a motion "is determined by 'an objective standard of reasonableness and does not require that the party have acted in good faith.'" *Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*, 273 F.R.D. 372, 377 (S.D.N.Y. 2011) (quoting *Bowne of New York City, Inc. v. AmBase Corp.,* 161 F.R.D. 258, 262 (S.D.N.Y. 1995)). "A motion is substantially justified if there is a 'genuine dispute, or if reasonable people could differ' as to the appropriateness of the contested action." *FD Special Opportunities V, LLC v. Silver Arch Cap. Partners, LLC*, No. 21 Civ. 797 (JLR) (OTW), 2022 WL 17730098, at *1 (S.D.N.Y. Dec. 15, 2022) (cleaned up) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

Fee-shifting under Rule 37(a)(5) is mandatory unless one of the conditions for not making an award is found to exist, and the burden of persuasion is on the losing party to avoid an award of expenses. *See Pegoraro v. Marrero*, No. 10 Civ. 51 (AJN) (KN), 2012 WL 5964395, at *4 (S.D.N.Y. Nov. 28, 2012).

## DISCUSSION

As summarized above, Vonage's pending motion for costs embraces four matters that have not yet been decided: (1) Vonage's provisional sealing motion at

Dkt. No. 195; (2) Venture's sealing motion at Dkt. No. 200; (3) Venture's sealing motion at Dkt. No. 211; and (4) Vonage's efforts to obtain audio recordings from TPV. (Dkt. Nos. 208-09, 219).[6] The Court first addresses the three sealing motions and then addresses the TPV recordings issue.

### A. Sealing Motions

#### 1. Applicability of Rule 37(a)(5)

Before reaching the merits of Vonage's application, the Court must address a threshold legal defense raised by Venture. Venture claims that Rule 37(b)(5) "does not apply" at all to its motions to seal. (Dkt. No. 216 at 2). This is so, Venture contends, because Rule 37(a)(5) applies "where a motion to compel is made, and/or a protective order is necessary," and its motions to seal involved neither. (*Id.* at 2-3). As Venture put it in its objections to Judge Wang's award of costs in her December 2023 Order, "motions to seal are governed by cases regarding public access to the docket and not by discovery rules." (Dkt. No. 261 at 10 (cleaned up)).

Vonage responds that Venture's motions to seal "were Rule 26(c) motions to purportedly enforce a protective order 'requiring that a trade secret . . . or commercial information not be revealed or be revealed only in a specified way.'" (Dkt. No. 219 at 2 (quoting Fed. R. Civ. P. 26(c)(1)(G)). Under Rule 26(c)(3), "Rule 37(a)(5) applies to an award of expenses" associated with a motion under Rule 26(c). Fed. R. Civ. P. 26(c)(3). Therefore, Vonage reasons, an unsuccessful motion for a protective order under Rule 26(c) can, if not substantially justified, result in an

---

[6] At and before the November 2024 conference before Judge Abrams, the parties confirmed that these issues remained for resolution by the undersigned. (Tr. at 2:24-3:10; Dkt. No. 350).

award of costs under Rule 37(a)(5)(B). (Dkt. No. 219 at 2; *see also* Dkt. No. 275 at 7-8).

As to the latter point, Vonage is clearly correct. Courts have held that costs may be awarded under Rule 37(b)(5) where a motion for a protective order made under Rule 26(c) was not substantially justified. *See, e.g.*, *Garner v. City of New York*, No. 17 Civ. 843 (JGK) (KNF), 2018 WL 5818109, at *3 (S.D.N.Y. Oct. 17, 2018); *CSL Silicones Inc. v. Midsun Grp. Inc.*, No. 3:14-cv-1897 (CSH), 2016 WL 3568173, at *5-6 (D. Conn. June 27, 2016); *Pegoraro*, 2012 WL 5964395, at *6. The plain language of Rule 26(c)(3)— "Rule 37(a)(5) applies to an award of expenses"— compels that conclusion.

Less clear is the validity of Vonage's premise: that Venture's motions to seal were motions under Rule 26(c). Vonage cites no case for that proposition. And the cases it cites awarding costs under Rule 26(c) and Rule 37(a)(5) do not involve motions to seal. To be sure, the text of Rule 26(c)(1)(G), upon which Vonage relies, specifically allows the court to issue a protective order to protect a party against disclosure of a "trade secret or other confidential research, development, or commercial information." When courts issue protective orders to ensure that a party's sensitive business information disclosed during discovery may be designated as confidential, thereby restricting the party's adversary from disclosing the information, they act pursuant to Rule 26(c)(1)(G). *See, e.g.*, *Garnett-Bishop v. N.Y. Cmty. Bancorp, Inc.*, No. 12 Civ. 2285 (ADS) (ARL), 2013 WL 101590 (E.D.N.Y. Jan. 8, 2013). But Rule 26(c) does not speak explicitly of motions to seal, and it does not

necessarily follow from the Rule's language that a motion to seal is a motion for (or, as Vonage puts it, to enforce) a protective order under Rule 26(c).

The source of a court's authority to issue a sealing order is not entirely clear. Although not cited by Vonage, numerous cases could be cited for the proposition that this authority indeed derives from Rule 26(c). *See, e.g., Manasco v. Best in Town, Inc.*, No. 2:21-cv-381-JHE, 2022 WL 816469, at *1 (M.D. Ala. Mar. 17, 2022) ("A federal court's authority to seal or otherwise prevent public access to documents or proceedings is derived from Rule 26(c) of the Federal Rules of Civil Procedure."); *Boyce v. Moberly Public School Dist.*, No. 2:06CV44 ERW, 2007 WL 1378427, at *1 (E.D. Mo. May 7, 2007) ("Federal Rule of Civil Procedure 26(c) authorizes federal district courts to seal or otherwise deny public access to documents or proceedings."); *Club v. Franklin County Power of Illinois*, No. 05-4095-JPG, 2006 WL 1389014, at *1 (S.D. Ill. May 19, 2006) ("The authority to maintain documents under seal derives from Rule 26(c), which allows the Court to enter protective orders 'for good cause shown.'"); *Buckmaster v. Wyman*, No. 05-C-166, 2005 WL 3274335, at *1 (E.D. Wisc. Dec. 2, 2005) ("The court's authority to seal documents in a civil case derives from Fed. R. Civ. P. 26(c), which allows the court to enter protective orders 'for good cause shown.'"); *In re Peregrine Sys., Inc., Sec. Litig.*, Case No. 02CV870-BEN (RBB), 2005 WL 8158818, at *6 (S.D. Cal. Feb. 2, 2002) ("The federal district courts also have authority to seal or otherwise deny public access to documents or proceedings from Rule 26(c) of the Federal Rules of Civil Procedure.").

14

Authority to this effect, if not quite as explicit, also exists within this Circuit. *See, e.g.*, *Joy v. North*, 692 F.2d 880, 884, 893 (2d Cir. 1982) (referring to documents submitted in support of a summary judgment motion as having been "put under seal pursuant to a protective order" and stating that "[p]rivate matters which are discoverable may, upon a showing of cause, be put under seal under Rule 26(c)"); *BAT LLC v. TD Bank, N.A.*, No. 15 Civ. 5839 (RRM) (CLP), 2019 WL 13236131, at *8 (E.D.N.Y. Sept. 24, 2019) ("Rule 26(c) permits a court to issue a protective order authorizing a party to file a document under seal 'for good cause.'"); *Tropical Sails Corp. v. Yext, Inc.*, No. 14 Civ. 7582, 2016 WL 1451548, at *1 (S.D.N.Y. Apr. 12, 2016) (beginning discussion of whether to seal documents submitted in connection with summary judgment and class certification motions by noting that "Federal Rule of Civil Procedure 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." (citation omitted)); *King Pharms., Inc. v. Eon Labs, Inc.*, No. 04 Civ. 5540 (DGT), 2010 WL 3924689, at *6 (E.D.N.Y. Sept. 28, 2010) (stating that litigants who sought sealing of sensitive proprietary and trade secret information contained in their briefs "in effect . . . seek a protective order under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure"); *In re Parmalat Secs. Litig.*, 258 F.R.D. 236, 242, 248-57 (S.D.N.Y. 2009) (analyzing sealing requests for documents submitted in connection with summary judgment motions with reference to whether defendants had shown "good cause" under Rule 26(c)); *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec.*

*Dealers, Inc.*, No. 07 Civ. 2014 (SWK), 2008 WL 199537, at *2-3 (S.D.N.Y. Jan. 22, 2008) (invoking Rule 26(c) in issuing protective order sealing judicial documents).

But Rule 26(c) is not the only source of a district court's authority to seal records. The court's "'supervisory power over its own records and files'" also enables it to issue sealing orders. *Chevron Corp. v. Donziger*, No. 11 Civ. 691 (LAK), 2013 WL 646399, at *4 (S.D.N.Y. Feb. 21, 2013) (quoting *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140-41 (2d Cir. 2004)); *see also Brightwell v. McMillan Law Firm*, Case No.: 16-CV-1696 W (NLS), 2017 WL 5885667, at *1 (S.D. Cal. Nov. 29, 2017) ("District courts . . . have authority to seal and unseal court records, a power that derives from their inherent supervisory power."); *Mich. Prot. & Advocacy Serv., Inc. v. Caruso*, No. 5:05-CV-128, 2006 WL 958496, at *3 (W.D. Mich. Apr. 10, 2006) (relying on "the Court's inherent and common law authority to seal court records" in ordering sealing of portions of complaint as opposed to Rule 26(c), "a discovery rule").

It is also true that "different standards govern requests for a protective order under Rule 26(c) and motions to file documents under seal." *Kelly v. Jefferies Grp., Inc.*, No. 17 Civ. 2432 (ALC) (KNF), 2018 WL 8221524, at *5 (S.D.N.Y. Oct. 25, 2018). Viewed one way, the higher standard applicable to motions to seal judicial documents suggests that such motions fall outside Rule 26(c). *See Haidon v. Town of Bloomfield*, 552 F. Supp. 3d 268, 269 (D. Conn. 2021) ("Rule 26(c) governs a district court's decision whether to issue a protective order regarding materials that are *not* 'judicial documents.'" (emphasis added)); *In re SunEdison, Inc. Sec. Litig.*,

Nos. 16 MD 2742, 16 MD 7917 (PKC), 2019 WL 126069, at *1 (S.D.N.Y. Jan. 7, 2019) ("Rule 26(c) governs protective orders used by parties in civil discovery, not the separate and more demanding burden that must be met to file judicial documents under seal.").  Viewed another way, this higher standard means merely that Rule 26(c)'s "good cause" standard is applied more rigorously in the context of a motion to seal.  *See Tropical Sails Corp.*, 2016 WL 1451548, at *1 (stating that proponent's burden to demonstrate "good cause" for a Rule 26(c) protective order "'is significantly enhanced with respect to "judicial documents"'" (quoting *Standard Inv. Chartered, Inc. v. FINRA*, 347 F. App'x 615, 615 (2d Cir. 2009))); *In re Parmalat*, 258 F.R.D. at 242 (stating that, in context of sealing motion, Rule 26(c)'s "'good cause' analysis is informed by the presumptions of public access under the common law and the First Amendment"); *Standard Inv. Chartered Inc.*, 2008 WL 199537, at *3 (stating that "'protective order[s] sealing'" court records "'must satisfy a more demanding standard of good cause'" (quoting *In re Terrorist Attacks on September 11, 2001*, 454 F. Supp. 2d 220, 222-23 (S.D.N.Y. 2006))).

The foregoing discussion is admittedly abstruse.  Normally, the precise source of a federal court's authority to seal records is of no practical consequence, as no one doubts that this authority exists.  But it makes a difference here.  Venture's sealing motions plainly were not motions to compel discovery under Rule 37, the typical circumstance triggering an application for costs under Rule 37(a)(5).  If they are subject to Rule 37(a)(5) at all, it can only be because (as Vonage argues) Venture

sought a form of protective order under Rule 26(c).[7]  While logic and sound policy may suggest that the making of virtually any pretrial motion lacking substantial justification should be eligible for an award of costs, Rule 37(a)(5) does not extend so far.  Indeed, "[t]here are still some motions relating to discovery in connection with which an award of expenses is not authorized by Rule 37(a)(5)."  8B Wright & Miller, *Federal Practice & Procedure* § 2288 n.15 (3d ed. Sept. 2025 update); *see id.* at n.15 (listing numerous examples of such motions, such as an application for an order to limit the duration of a deposition, an application for leave to take more than ten depositions, and a motion to quash a Rule 45 subpoena).

Ultimately, the Court finds that Venture's requests for sealing in this case are properly characterized as motions falling within Rule 26(c).  Generally speaking, the documents as to which sealing was sought were documents produced during discovery and designated as confidential under the Protective Order.  Each of Venture's sealing requests noted that it involved documents that had been "designated as 'confidential' under the Protective Order in this case."  (Dkt. No. 195 at 1; Dkt. No. 200 at 1; Dkt. No. 211 at 3 (relying on arguments in Dkt. No. 200); *see also* Dkt. Nos. 118, 173, 183 (prior Venture letters seeking sealing of documents encompassed by Dkt. No. 195)).  In substance, Venture was seeking to extend the

---

[7] In its response to Venture's objections to the December 2023 Order, Vonage argued, in the alternative, that Judge Wang had the "inherent power" to award fees as a form of sanctions based on Venture's "dishonest and bad faith conduct."  (Dkt. No. 275 at 8).  But Vonage did not seek on award of fees on that basis in either of its two briefs in support of its motion for costs, so the Court need not consider this argument.  Even if it were considered, the Court does not find that Vonage has shown dishonest or bad faith conduct on the part of Venture warranting an award of sanctions.  (*See* discussion *infra*).

protections of the Protective Order to the filing of the documents on the docket.  In other words, as indicated by the weight of the case law as described above, Venture was seeking relief under Rule 26(c), as permitted when the potential disclosure of discovery material threatens harm to a party's commercial interests.

Moreover, while Venture was required to satisfy the Second Circuit's three-part test for sealing judicial documents, *see Lugosch v. Pyramid Co. of Onondaga*, 43 F.3d 110, 119-20 (2d Cir. 2006), that did not render Rule 26(c) irrelevant to its sealing requests.  In order to prevail, Venture needed to show that the documents designated as confidential under the Protective Order were in fact confidential.  That is an issue governed by Rule 26(c)'s "good cause" standard.  *See Cantu v. Flanagan*, No. 05 Civ. 3580 (DGT), 2007 WL 10159556, at *3 (E.D.N.Y. May 16, 2007) ("[W]here, as here, a previously approved protective order permits the parties to designate materials as 'confidential' without a showing of good cause, Rule 26(c) legal standards govern disputes as to the propriety of such designations."); *see also In re Parmalat*, 28 F.R.D. at 243 ("A blanket protective order temporarily postpones the good cause showing [under Rule 26(c)] until a party or intervenor challenges the continued confidential treatment of particular documents.").  Absent such a showing, there would be no basis for sealing.  *See, e.g.*, *In re Lifetrade Litig.*, No. 17 Civ. 2987 (JPO) (KHP), 2022  WL 974448, at *1 (S.D.N.Y. Mar. 31, 2022) (documents designated as confidential that "are not confidential at all" could not be sealed).  And, in fact, Vonage argued that many of Venture's documents did not

contain confidential information and should have been de-designated as confidential. (*See* Dkt. No. 195 at 1; Dkt. No. 212 at 2-3).

Thus, whether or not a motion to seal may, as a general matter, be considered a motion for a Rule 26(c) protective order, the Court is satisfied that, in the circumstances of this case, Venture's sealing requests so qualify. Accordingly, pursuant to Rule 26(c)(3), Vonage is entitled to an award of costs under Rule 37(a)(5)(B) unless Venture's sealing requests were substantially justified or an award of costs would be unjust. The Court now turns to that question.[8]

### 2.  Provisional Sealing Motion (Dkt. No. 195)

As noted above, Vonage made a provisional motion to seal certain statements in its reply brief in support of its summary judgment motion filed on October 5, 2022. (Dkt. No. 195). Those statements quoted from or referenced 20 documents that Venture had designated as confidential pursuant to the Protective Order. (*Id.* at 1 & n.1). Those documents consisted mainly of emails produced by Venture, along with two sub-agent agreements and Venture's amended response to interrogatories served by Vonage. (See Dkt. No. 164 Exs. 8, 10, 11, 13-17, 19, 20, 22, 34-37; Dkt. No. 191 Exs. 28, 36, 44 and 49). These same documents were among those that Judge Wang had declined to seal in her September 2022 Order. (Dkt. No. 194 at 8).

---

[8] Although Vonage has not cited and I (like Judge Abrams) have not found cases awarding costs under Rule 37(a)(5) based on a failed motion to seal, costs have been awarded under Rule 37(a)(5) based on a *successful* motion to seal involving documents subject to an underlying protective order. *See Evans v. Cardinal Health*, Case No. 19-10751, 2020 WL 8459004, at *2 (E.D. Mich. Nov. 19, 2020). It is difficult to see why the result should be different if the motion was unsuccessful.

Venture argues that Vonage did not provide Venture with the list of confidential documents Vonage intended to refer to in its reply papers until 11:09 am on October 5, 2022, the day the brief was due.  (Dkt. No. 216 at 3-4).  Venture was on that same day preparing its opposition brief to Vonage's *Daubert* motion.  (*Id.* at 4).  As a result, Venture claims, Venture's counsel had "no time to review the documents, or confer with its client," and thus was "forced to keep the confidentiality designations in order to protect proprietary business information." (*Id.*).

While perhaps overstated, Venture's argument is persuasive at its core.  On October 5, 2022, Venture had only been in possession of Judge Wang's September 2022 Order for two days.  That Order did not conclusively reject Venture's request to seal the documents in question.  Rather, Judge Wang denied Venture's motions to seal at Dkt. Nos. 118 & 125 because Venture had not properly applied the relevant legal standard to the particular documents in question and instead sought "wholesale sealing" without any attempt to identify and redact the portions of the documents containing sensitive business information.  (Dkt. No. 194 at 8).  Judge Wang stayed her ruling until October 7, 2022 to give Venture an opportunity to file a proper sealing motion with proposed redactions.  (*Id.*).

Hence, at the time it learned of Vonage's proposed disclosures of the documents at 11:09 a.m. on October 5, Venture still had two days to decide whether to continue to seek sealing of those documents (or portions thereof) pursuant to Judge Wang's September 2022 Order.  Given that Vonage needed to file its reply

papers later on October 5; that Venture had its own filing in this case due on that date; and that a reasonably large number of documents was involved, it was reasonable for Venture to decide to protect the confidentiality of the documents for the time being.  It is not as if Venture's original position that these documents warranted sealing was without basis.  In fact, in overturning Judge Wang's October 2023 Order, Judge Abrams found that Venture's position was substantially justified.  (Tr. at 18:8-10).  Under these circumstances, Vonage's argument that Venture merely faced a "faux time-crunch," because the documents in question had been subject to the prior motions to seal, is unpersuasive.  (*See* Dkt. No. 219 at 9).

The Court thus cannot conclude that Venture lacked substantial justification for declining to surrender its confidentiality designations and argument for sealing on October 5, 2022.  As Venture's position was substantially justified, an award of costs under Rule 37(a)(5) is not warranted.

### 3.   October 5, 2022 Sealing Motion (Dkt. No. 200)

In its October 5, 2022 sealing motion related to its opposition to Vonage's *Daubert* motion, Venture sought sealing for 16 documents attached to a declaration filed by its counsel, Joseph A. Boyle (Dkt. No. 206), and one document attached to a declaration submitted by its expert witness, Ariel Collins (Dkt. No. 205).  (Dkt. No. 200).  These documents include emails between Venture and Vonage, business plans related to Venture's partnership with Vonage, the parties' CPA and an addendum thereto, Venture interrogatory responses, and Collins' expert report.  (*See* Dkt. No. 206 Exs. 1-13, 15-18; Dkt. No. 205 Ex. 1).

22

In its October 11, 2022 response, Vonage stated that it agreed to the sealing of Collins' expert report and to the first two exhibits attached to the Boyle Declaration. (Dkt. No. 212 at 1-2).[9] Vonage opposed sealing for the remaining 14 documents. All but one of those documents, Vonage stated, either "were already filed publicly in this litigation" or "were never designated as confidential under the Protective Order" by either party. (*Id.* at 2 (quotations omitted)). As for the remaining document, which was designated as confidential, Vonage argued that Venture had failed to offer any reasonable justification for wholesale sealing of the document without redactions. (*Id.* at 3).

As noted above, Vonage first sought costs in connection with Venture's sealing motion at Dkt. No. 200 in Vonage's reply brief in support of its motion for costs. (Dkt. No. 219 at 8-9). Venture did not respond or seek leave to respond to Vonage's reply brief. As also noted above, when Judge Wang issued her December 2023 Order on Vonage's motion for costs, she declined to address Vonage's request for costs in relation to Dkt. No. 200, recognizing that Venture had not yet been heard on the issue. (Dkt. No. 255 at 3). She then gave Venture an opportunity to be heard in her Order issued the following day. (Dkt. No. 256). Venture, however, chose not to avail itself of that opportunity and so has not contested the arguments made by Vonage in support of its application for costs related to Dkt. No. 200.

---

[9] At the same time, Vonage criticized Venture for failing to meet and confer with Vonage prior to filing the sealing motion. (*Id.* at 1). Although Venture obliquely represented in its October 5 letter that it was moving to seal "[a]fter consultation with counsel for Vonage" (Dkt. No. 200 at 1), it has not disputed Vonage's assertion that it failed to engage in a meet-and-confer process.

More specifically, Venture has not disputed Vonage's assertions that 13 of the documents it sought to file under seal through its letter motion at Dkt. No. 200 were either publicly filed earlier in the litigation or never marked confidential to begin with.  The Court's independent review shows that Vonage's assertions are substantially correct.  Exhibits 3, 6, 10, 16, 17 and 18 to the Boyle Declaration were previously filed on the public record, some by Venture and some by Vonage (without objection from Venture), in connection with Vonage's summary judgment motion. (*See* Dkt. No. 190-2, Dkt. No. 190-7, 190-1; Dkt. No. 165-1; Dkt. No. 165-53; Dkt. No. 165-55).[10]  And Exhibits 4, 5, 7, 9, 11, 12 and 15 do not bear confidentiality stamps, although they do bear Bates numbers showing they were previously produced by Venture.[11]

It is difficult to see how Venture could have a good faith argument as to why documents that were previously filed publicly or were produced by Venture without any claim of confidentiality should be sealed.  And although Venture's sealing motion argued generally that the documents subject to the motion contained sensitive business information (*see* Dkt. No. 200 at 3-4), the motion put forth no argument as to why these particular documents should be filed under seal given that they had previously been filed publicly and/or produced without a confidentiality stamp.  Nor did Venture make such an argument after Vonage's

---

[10] Vonage's list of such documents includes Exhibit 9 to the Boyle Declaration, but does not identify where it was previously filed publicly.  (Dkt. No 212 at 2 n.2).  Conversely, Vonage's list fails to include Exhibit 17, even though that document was previously filed publicly.

[11] Four of the documents that were previously filed publicly (Exhibits 3, 6, 10 and 18) also do not bear confidentiality designations.

response pointed out that these documents were filed publicly or produced without a confidentiality stamp.  Therefore, the Court finds that Venture had no substantial justification for seeking sealing of these 13 documents.

The remaining document, Exhibit 8 to the Boyle Declaration, describes how Venture proposed implementing its services for Vonage.  (Dkt. No. 205 Ex. 8).  According to Vonage, the document was prepared in 2015 and does not contain proprietary or confidential information.  (Dkt. No. 212 at 3).  The Price Declaration, submitted in support of Venture's sealing information, makes no argument specific to Exhibit 8.  Instead, the Price Declaration avers generally that presentations regarding Venture's plans and strategy to sell Vonage services contain information that "fallS [sic] within the proprietary business information of Venture," including "references to carriers" who previously served as partners for Venture as well as information about Venture's "compensation/commission structure, the quality control process, and the role of data platforms, among other attributes."  (Dkt. No. 213 ¶¶ 4, 7).

As Vonage points out, however, the names of Venture's prior partners can be found via public searches and Exhibit 8 was not provided to Vonage on a confidential basis.  (Dkt. No. 212 at 3).  Moreover, much of the same information in Exhibit 8 is also contained in Exhibits 4 and 12 to the Boyle Declaration, which Venture did not even designate as confidential or file under seal.  (*Id.*).  Perhaps most importantly, Venture sought to seal Exhibit 8—a nearly four-page, single-spaced document—in its entirety without *any* redactions.  As Judge Wang noted in

her October Order, this was "in direct contravention" of the September 2022 Order, which specifically condemned the "wholesale sealing" proposed in Venture's prior motions to seal and required Venture, if it wished to protect confidential information in those documents, to resubmit them with "proposed (and preferably agreed) redactions." (Dkt. No. 218 at 2; *see* Dkt. No. 194 at 8). A review of Exhibit 8 makes plain that, at a minimum, much of the information in it cannot plausibly be viewed as sensitive business information. Given the clear and unambiguous warning Venture had received from Judge Wang just days before, there is no reasonable justification for Venture's request for wholesale sealing of Exhibit 8 without any redactions. And indeed, no such justification was even offered in Venture's motion to seal, in the Price Declaration, or at any other time.

Accordingly, the Court finds that Venture had no substantial justification for its motion to seal with respect to Exhibit 8.

### 4. October 7, 2022 Sealing Motion (Dkt. No. 211)

Venture's October 7, 2022 sealing motion sought to maintain under seal five documents designated as "highly confidential" under the Protective Order: (1) a document containing a list of Venture's sub-agents, which had been included in Vonage's motion for summary judgment; and (2) four documents submitted as part of Vonage's *Daubert* motion. (Dkt. No. 211 at 2-3). In its response, Vonage did not oppose sealing of the latter four documents. (Dkt. No. 214). As Vonage did not incur any costs opposing sealing of these documents, there is no basis for an award of costs under Rule 37(a)(5) related to these documents. *See* Fed. R. Civ. P.

37(a)(5)(B) (authorizing court to order unsuccessful movant "to pay the party . . . *who opposed the motion* its reasonable expenses incurred in *opposing the motion*") (emphasis added).[12]

With respect to the list of sub-agents, which was contained in Exhibit 4 to a declaration filed by Vonage's counsel in support of its summary judgment motion (Dkt. No. 164-4), both Vonage, in its letter opposing sealing of this document, and Judge Wang, in her October 2022 Order, correctly noted that the names of all these sub-agents were contained in Exhibit 22 attached to the same declaration filed by Vonage's counsel, and that Venture did *not* seek sealing as to that document.  (Dkt. No. 214 at 1 n.1; Dkt. No. 218 at 2; *see* Dkt. No. 164-22).  There is a difference, however, between the two documents.  Exhibit 22 lists the names of the sub-agents and the gross revenues associated with each (Dkt. No. 164-22), whereas Exhibit 4 lists the names of the sub-agents and phone numbers and addresses for them (Dkt. No. 164-4).  In requesting sealing for Exhibit 4, Venture argued that this exhibit (among other documents subject to the motion) contained "personally identifiable information" ("PII") of people and entities in Venture's business network.  (Dkt. No. 173 at 2; Dkt. No. 200 at 3; Dkt. No. 211 at 2).[13]  The Court will assume this argument applies to the sub-agents' phone numbers and addresses.

---

[12] As noted above, despite Vonage's non-opposition, Judge Wang declined to seal these documents, finding that Venture had not proffered a sufficiently specific rationale to justify sealing.  (Dkt. No. 218 at 3).  Nonetheless, Vonage cannot be awarded costs it incurred in opposing the motion when it incurred no such costs.

[13] In a previously filed sealing motion, Venture made this same argument and cited a case for the proposition that courts "have sealed customer lists containing identifying information of non-parties due to the significant privacy interests at stake."  (Dkt. No. 183 (quoting *Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*, 335 F. Supp. 3d 566, 600 (S.D.N.Y. 2018) (quotation marks omitted)).

It is, to say the least, questionable that this information implicates legitimate privacy interests of the sub-agents warranting sealing. Most of the sub-agents are business entities, and the phone numbers and addresses appear to be those for the business and not for any individual employee. Further, an internet search indicates that at least some sub-agent phone numbers and addresses are publicly available. Nevertheless, at least four of the sub-agents are individuals. (*See* Dkt. No. 164-4). Phone numbers and addresses are generally considered PII. *See Lee v. Springer Nature Am., Inc.*, 769 F. Supp. 3d 234, 254-55 (S.D.N.Y. 2025). And Exhibit 4 had been designated as "Highly Confidential" in Venture's production, pursuant, perhaps, to the addendum to the Protective Order that had been agreed upon by the parties and approved by Judge Wang in December 2020. (Dkt. No. 68).

While the Court agrees with Judge Wang's decision that sealing for Exhibit 4 was unwarranted, it was not wholly unreasonable for Venture to seek sealing of its sub-agents' phone numbers and addresses. To view the matter in context, Venture's October 7, 2022 letter seeking sealing of Exhibit 4 was the submission in which Venture advised Judge Wang, pursuant to her September 2022 Order, which documents it would continue to claim confidentiality over. In general, Venture agreed in that letter to de-designate the vast majority—more than 70—of the documents that were the subject of its prior motions to seal. (Dkt. No. 211 at 2). The only exceptions were the four documents discussed above, which Vonage did not oppose sealing, and Exhibit 4. That Venture may have made a mistake as to one of more than 70 documents does not create a compelling case for an award of costs,

particularly since Vonage's costs consist of its fees for preparing its October 13, 2022 response letter, which was limited, as relevant here, to one paragraph and one footnote. (Dkt. No. 214 at 1).[14]

Accordingly, as an award of costs would be unjust, the Court denies Vonage's motion for costs related to Venture's motion to seal at Docket No. 211.

### B. TPV Recordings Issue

In its opposition to Vonage's motion for costs, Venture provided a lengthy defense of its actions with respect to the TPV recordings issue. (Dkt. No. 216 at 4-8). Among other things, Venture asserts that Judge Wang previously properly denied Vonage costs associated with this issue in her Order of February 22, 2021, that Vonage in fact took no steps to obtain recordings from TPV until after Judge Wang's Order, that Venture made no misrepresentations about Vonage's ability to obtain recordings from TPV, and that no unnecessary motion practice ensued. (*Id.* at 4-7). Venture also argues that, to obtain its costs, Vonage must seek reconsideration of the February 2021 Order and it has not done so. (*Id.* at 8).

In its reply brief, Vonage does not engage with Venture's substantive assertions, opting instead to simply repeat its claim for costs in conclusory terms. (Dkt. No. 219 at 9-10). Reviewing the record, the Court agrees with Venture that Vonage has not established that Venture made any misrepresentations in connection with the TPV recordings issue, let alone any that caused Vonage to incur costs via unnecessary motion practice.

---

[14] Vonage's October 13 letter contains a second paragraph, but that paragraph relates to Vonage's own request that an exhibit to one of Venture's filing remain under seal.

The alleged misrepresentations are Venture's statements, prior to Judge Wang's February 2021 Order, that it "understood" that "Vonage could request the recordings from the vendor." (Dkt. No. 77 at 1; *see* Dkt. No. 74 at 2; *see also* Dkt. No. 194 at 7-8). Vonage claims those statements were false because a TPV Executive Vice President stated, in an affidavit submitted by Vonage in support of its October 2021 motion for sanctions, that it was his understanding that he "needed Venture's permission prior to providing any call recordings in TrustedTPV's possession to Vonage." (Dkt. No. 116-19 ¶ 7; *see* Dkt. No. 114 at 9-10 & n.3). The Court does not view these two statements as contradictory. Vonage could, and did, request the recordings from TPV, as Venture represented. (Dkt. No. 114 at 10). That TPV needed Venture's permission to provide the recordings (assuming that it did) would not make Venture's representations false or misleading, unless Venture knew its permission was required and had no intention of granting such permission. But in fact, as set forth in the same TPV affidavit upon which Vonage relies, "Venture gave [TPV] permission on February 25, 2021 to grant Vonage access to the records that TrustedTPV has regarding calls that Venture and its subagents made for Vonage." (Dkt. No. 116-19 ¶ 8). Venture asserts without contradiction that this permission was granted before Vonage even contacted TPV. (Dkt. No. 216 at 5).

Accordingly, although Judge Wang expressed concern in the September 30, 2022 Order that she had previously required Vonage to detail its efforts to obtain recordings from TPV "when it turns out that such efforts would have been futile" (Dkt. No. 194 at 7), Vonage has failed to substantiate the assertion that such efforts

would, in fact, have been futile.  True, Vonage's efforts did not bear fruit, because TPV "[did] not have any additional recordings related to Vonage other than" the approximately 20,000 recordings previously produced by Venture.  (Dkt. No. 116-19 ¶ 9; *see* Dkt. No. 70 at 2).  But Venture never represented that TPV would have additional recordings; rather, in response to Vonage's complaints that the sales calls produced by Venture were incomplete, Venture invited Vonage to contact TPV to ascertain whether additional recordings were available.  (Dkt. No. 74 at 2).  There was nothing improper with that invitation.  Nor did it result in Vonage's having to incur any costs that should be borne by Venture.

Therefore, Vonage has not established a basis for an award of costs against Venture, or any other form of sanctions, based on the TPV recordings issue.

### C.  Costs Awarded

As detailed above, the Court has granted Vonage its costs only in connection with Venture's October 5, 2022 sealing motion (Dkt. No. 200).  In Appendix A to its reply brief, Vonage included a chart summarizing the fees it incurred in connection with this motion and Venture's October 7, 2022 sealing motion.  (Dkt. No. 219 at 16).  This is an insufficient basis for the Court to calculate a cost award, for two reasons.

First, Appendix A presents the hours and fees for *both* October 2022 motions together, without separating out the hours and fees attributable to the October 5, 2022 motion.  Since the Court has denied Vonage its requested costs related to the

October 7, 2022 motion (Dkt. No. 211), Vonage will need to resubmit a calculation of its hours and fees for the October 5, 2022 motion alone.

Second, Vonage did not provide any supporting time records or other substantiation for the fees set forth in Appendix A. This is in contrast to Vonage's fee requests covered by its opening brief in support of its motion for costs, *i.e.*, fees incurred in connection with the provisional motion to seal (Dkt. No. 195) and the TPV recordings issue. That brief was accompanied by a declaration from counsel explaining Vonage's calculations and attaching the relevant time entries. (Dkt. No. 210). Vonage will need to submit similar information in support of its request for an award of costs related to the October 5, 2022 sealing motion.

In its opposition brief, Venture objected both to the amount of time spent by Vonage's counsel, and to counsel's hourly rates, as excessive. (Dkt. No. 216 at 12-14). In her December 2023 Order awarding Vonage $24,643.63 in fees for the previously filed sealing motions, Judge Wang overruled those objections, finding both the time spent and the hourly rates reasonable. (Dkt. No. 255 at 2). The Court agrees and likewise rejects Venture's objections as relevant to the October 7, 2022 sealing motion. Venture's opposition brief also claimed that Vonage's application was insufficient because it relied on block-billed and vague time entries. (Dkt. No. 216 at 9-10). The Court has reviewed those objections and finds them to be without merit. If the time records to be submitted in support of Vonage's requested fees for the October 5, 2022 motion contain the same level of detail, that will be a sufficient basis for an award of costs.

## CONCLUSION

For the reasons set forth above, Vonage's motion for costs is hereby

**GRANTED IN PART** and **DENIED IN PART**.  Vonage shall have until March 20,

2026 to submit the additional information necessary for the Court to calculate the

fees to be awarded to Vonage pursuant to this Opinion & Order.

DATED:      New York, New York
                    March 10, 2026

_____

The Honorable Gary Stein
United States Magistrate Judge

33